**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

JEFFREY JOEL JUDY,

        Plaintiff,

vs.                                            Case No.  2:07-cv-211-FtM-34DNF

LEE MEMORIAL HEALTH SYSTEM, a
special purpose unit of the local
government created by special act of the
Florida legislator, and CENTRAL
PARKING SYSTEM OF FLORIDA, INC., a
Tennessee corporation,

        Defendants.

_____/

**O R D E R**

**THIS CAUSE** is before the Court on Defendant, Central Parking System of Florida, Inc.'s Motion to Dismiss Second Amended Complaint (Dkt. No. 40; Motion to Dismiss 1), filed on July 19, 2007, and Lee Memorial Health System's Amended Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. No. 50; Motion to Dismiss 2) (collectively "Motions to Dismiss"), filed on August 14, 2007.  Plaintiff has filed responses in opposition to the Motions.  See Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. No. 52; Response to Motion to Dismiss 1), filed on August 16, 2007; Plaintiff's Opposition to Defendant Lee Memorial Health System's Motion to Dismiss (Dkt. No. 54; Response to Motion to Dismiss 2), filed on August 28, 2007.

## I.     Background Facts

On April 2, 2007, Plaintiff filed an initial complaint (Dkt. No. 1; Complaint) in this Court, asserting a federal claim against Lee Memorial Health System Foundation, Inc., Lee Memorial Hospital, Inc., and Central Parking System of Florida, Inc. ("Central Parking") under Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., as well as state law claims for negligent infliction of emotional distress and negligence against Central Parking. See generally Complaint.  Plaintiff filed an Amended Complaint (Dkt. No. 28) on June 8, 2007, and a Second Amended Complaint (Dkt. No. 37; Second Amended Complaint) on July 11, 2007.   The Second Amended Complaint differs from the Complaint in that Plaintiff omits Lee Memorial Hospital, Inc. as a defendant and does not reassert his negligent infliction of emotional distress claim against Central Parking. See generally Complaint; Second Amended Complaint.  Count I of the Second Amended Complaint sets forth Plaintiff's ADA claim against Defendants Lee Memorial Health System and Central Parking  (collectively "Defendants")[1] and Count II raises Plaintiff's negligence claim against Central Parking. See Second Amended Complaint at ¶¶ 25-39.

The Court will summarize the allegations in the Second Amended Complaint which pertain to the Motions to Dismiss.[2] Plaintiff is a "T8-T9 paraplegic [who] uses a wheelchair for his primary means of mobility." See id. at ¶ 4. Although Plaintiff's car is equipped with

---

[1] Plaintiff asserts that Defendants "are the owners and/or operators of the real property and improvements which is the subject of this action, to wit: the Property, 2773 Cleveland Ave., Ft. Myers, Florida 33901." See Second Amended Complaint at ¶ 6.

[2] In considering the Motions to Dismiss, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa County, Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).

hand controls, "it still has a full driver seat and all of the original indicator panels, [brake] and gas pedals." See id. at ¶ 10.  Other individuals are able to safely operate Plaintiff's vehicle by ignoring the hand controls.  See id.

On February 13, 2006, Plaintiff visited Lee Memorial Hospital in order to attend his bi-weekly physical therapy appointment.  See id. at ¶ 8.  Upon his arrival at Lee Memorial Hospital, Plaintiff dropped his car off with a valet attendant, who parked the car in a nearby lot.  See id. at ¶ 9.  After completing his physical therapy session, Plaintiff returned to the valet stand and waited on a nearby bench while the same valet attendant retrieved his car.  See id. at ¶ 11.  As she approached the passenger loading/unloading area, the valet attendant accelerated the car instead of applying the brake.  See id. at ¶ 12.  Plaintiff "heard the engine race, looked up, and saw his car headed straight for him at full speed."  See id. at ¶ 13.  Due to being disabled and confined to a wheelchair, Plaintiff was "unable to move out of the way given the short amount of time and the rapid rate of speed at which the car was headed toward him."  See id. at ¶ 14.  The valet attendant was able to swerve at the last moment and avoided hitting Plaintiff by inches.  See id. at ¶ 15.  However, Plaintiff witnessed the valet attendant crash the car into an adjacent concrete bench and collide with another valet employee who was "thrown over the bench and slammed into the outer wall of the hospital, eight to ten feet away."  See id. at ¶¶ 15-16.  In addition, Plaintiff was hit and covered by debris from the car and/or concrete bench and sustained injuries "in the forms of cuts, abrasions and bruises to his face and person".  See id. at ¶¶ 17-18.  As a result of this near-death experience, Plaintiff "was left in a state of intense apprehension and fear".  See id. at ¶ 19.

Two weeks later Plaintiff returned to the hospital and was informed that the valet attendants would no longer park cars with hand controls. See id. at ¶ 21. On a later date, Defendants posted a sign stating this policy. See id. at ¶ 22. Given Defendants' refusal to park his car, Plaintiff "is now forced to park his car himself in the uncovered parking lot, exit the vehicle sometimes in heavy rain, and wheel himself through the lot to the building's entrance while other able-bodied patients use the valet service provided at the hospital." See id. at ¶ 23. Moreover, on several occasions, Plaintiff has "suffered additional humiliation" when he wheeled past the valet stand and the valet attendants who were aware of the incident refused to look at or help him. See id. at ¶ 24.

**II.     Standard of Review**

In ruling on a motion to dismiss, the Court "must accept the allegations set forth in the complaint as true." Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).  Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic, 127 S. Ct. at 1974. The "plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).

### III. Discussion

In the Motions to Dismiss, Defendants argue that Count I of the Second Amended Complaint should be dismissed because their failure to provide valet services to customers whose cars have been modified to accommodate their disabilities is not an architectural barrier that is structural in nature. See Motion to Dismiss 1 at 2; Motion to Dismiss 2 at 2-3. In addition, Central Parking asks the Court to dismiss Count II of the Second Amended Complaint based on lack of subject matter jurisdiction. See Motion to Dismiss 1 at 4.

#### a. Count I

The Court will first address Defendants' argument that Count I of the Second Amended Complaint is due to be dismissed. While Defendants acknowledge that the ADA requires entities of public accommodation to remove architectural barriers in existing structures that are structural in nature when their removal is readily achievable, Defendants note that Plaintiff has failed to allege the presence of any architectural barrier that impeded his access to the Property in the Second Amended Complaint. See Motion to Dismiss 1 at 2-3; Motion to Dismiss 2 at 2-3. Referencing the initial Complaint, Central Parking asserts that "Plaintiff specifically alleges that he has 'experienced significant difficulty assessing [sic] the goods and utilizing the services therein due to the architectural barriers.'" See Motion

to Dismiss 1 at 3. In addition, Defendants note that Plaintiff did not allege that Lee Memorial Hospital failed to comply with the ADA Accessibility Guidelines. See Motion to Dismiss 1 at 3; Motion to Dismiss 2 at 4-5. Moreover, relying on Kornblau v. Dade County, 86 F.3d 193 (11th Cir. 1996), Central Parking argues that entities are not required to provide valet services in order to comply with the ADA. See Motion to Dismiss 1 at 3.

In Count I of the Second Amended Complaint, Plaintiff asserts that he has visited the Property at least twice a week. See Second Amended Complaint at ¶ 27. On each of these occasions, Plaintiff "experienced serious difficulty accessing the goods and utilizing the services therein due to the unequal treatment he now receives" given Defendants' refusal to valet park his car. See id. at ¶¶ 28-29. Indeed, Plaintiff alleges that Defendants are violating the ADA by "discriminating against [] Plaintiff due to [Defendants'] failure to properly train [their] valet staff in the operation of vehicles with hand controls and failure to provide an accessible or equivalent valet parking facilities [sic] for individuals who have cars with hand controls." See id. at ¶ 31. Plaintiff seeks injunctive and declaratory relief, in addition to attorney's fees and litigation expenses. See id. at ¶ 33.

Title III of the ADA, 42 U.S.C. §12181 et seq., prohibits discrimination based on disability in places of "public accommodation." 42 U.S.C. §12182(a). The ADA defines discrimination as including the following: (1) imposing or applying "eligibility criteria" that tend to screen out disabled individuals, § 12182(b)(2)(A)(I), (2) failing to make "reasonable modifications in policies, practices, or procedures" to accommodate disabled individuals, §12182(b)(2)(A)(ii), §12184(b)(2)(A), (3) failing to provide auxiliary aids and services to disabled individuals, § 12182(b)(2)(A)(iii), §12184(b)(2)(B), and (4) failing to remove

"architectural barriers, and communication barriers that are structural in nature" where the removal of such is "readily achievable," §12182(b)(2)(A)(iv), §12184(b)(2)(C).

As an initial matter, the Court finds Defendants' argument that Count I of the Second Amended Complaint should be dismissed on account of Plaintiff's failure to allege the presence of any architectural barriers that impeded his access to the property to be without merit. The Court notes that, while Plaintiff alleged in the Complaint that he was experiencing difficulty accessing the goods and services on the Property due to "architectural barriers", this allegation is absent from the Second Amended Complaint. See Complaint at ¶ 27; Second Amended Complaint at ¶¶ 25-33. Indeed, in the Second Amended Complaint, Plaintiff now alleges that his difficulties at the Property relate to the "unequal treatment" that he receives given Defendants' refusal to permit him to valet park his vehicle simply because it is equipped with hand controls. See id. at ¶ 29. Thus, while not clearly stated in the Second Amended Complaint, it appears that Plaintiff is asserting that Defendants are discriminating against him on the basis of his disability as that term is defined in 42 U.S.C. 42 U.S.C. §§ 12182(b)(2)(A)(i) and (b)(2)(A)(ii) by imposing "eligibility criteria" that prevent him from equally enjoying valet parking services and/or failing to make "reasonable modifications" in their "policies, practices, or procedures" to accommodate disabled individuals who utilize cars equipped with hand controls that are, nevertheless, capable of being operated without the use of the hand controls. See 42 U.S.C. §§ 12182(b)(2)(A)(i), (b)(2)(A)(ii); see also Second Amended Complaint at ¶¶ 10, 29-31; Response to Motion to Dismiss 1 at 3-4; Response to Motion to Dismiss 2 at 4. Notably, Defendants fail to directly address whether Plaintiff fails to state an ADA claim under either 42 U.S.C.

7

§§ 12182(b)(2)(A)(i) or (b)(2)(A)(ii). See generally Motion to Dismiss 1; Motion to Dismiss 2.

In addition, the Court finds Central Parking's reliance on Kornblau to be misplaced. In Kornblau, the plaintiff, who was not an employee of Dade County, demanded that Dade County provide a disabled parking space for her in the reserved employee parking lot. See Kornblau, 86 F.3d at 194. After finding that the district court did not err in granting Dade County's motion for summary judgment, the court summarily noted that plaintiff's argument that she "is entitled to valet services for her car is frivolous and needs no comment." See id. at 196. Notably, the Eleventh Circuit did not provide any background facts regarding the plaintiff's claim for valet services. See id. Nevertheless, nothing in the opinion suggests that Dade County was providing valet services to some, but not to the plaintiff as a result of her disability. See id. at 194-196. Thus, this decision fails to support the proposition that the instant claim of discrimination against Plaintiff on the basis of his disability must be dismissed.

In light of the foregoing, the Court finds that Motion to Dismiss 1 is **due to be denied**. The Court further finds that Motion to Dismiss 2 is **due to be denied** to the extent that it seeks the dismissal of Count I.[3]

---

[3] To the extent that Defendants suggest that the ADA Accessibility Guidelines do not require entities to provide valet services in order to be ADA compliant, see Motion to Dismiss 1 at 3; Motion to Dismiss 2 at 5, the Court finds this argument to misconstrue Plaintiff's claim. The claim currently before the Court in the Second Amended Complaint does not seek to require Defendants to provide valet services to the disabled in order to be ADA compliant. Rather, Plaintiff alleges that Defendants currently provide valet services, but do so in a manner that discriminates against individuals with disabilities. The ADA Accessibility Guidelines do not address such a claim. See 28 C.F.R. Pt. 36, Appendix A.

### b.     Count II

Central Parking argues that this Court lacks jurisdiction over Count II of the Second Amended Complaint because "[t]he amount in controversy is not alleged, there is no diversity among the parties and there is no [f]ederal question to address in Count II." See Motion to Dismiss 1 at 4.  Plaintiff responds that this Court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367.  See Response to Motion to Dismiss 1 at 7.

In Count II, Plaintiff alleges that Central Parking acted negligently by "breach[ing] its duty to ensure that all of its employees had adequate training to drive vehicles with hand controls." See Second Amended Complaint at ¶ 39.  Plaintiff contends that he suffered permanent injuries when "Defendant'[s] employees negligently operated his vehicle and crashed it into a concrete bench only inches away from [him]." See id. at ¶ 40.  Specifically, Plaintiff alleges that he suffers from "emotional and psychological distress and injury, insomnia, panic attacks, and nightmares." See id.

As noted above, Plaintiff raises a claim under the ADA in Count I.  See Second Amended Complaint at ¶¶ 25-33.  The Court has original jurisdiction over this claim because it arises under federal law.  See 28 U.S.C. § 1331.  However, the Court must determine whether it has supplemental jurisdiction over the state law negligence claim raised by Plaintiff in Count II.  The Court engages in a two-step inquiry in determining whether it has jurisdiction over Plaintiff's state law claim.  See Baggett v. First National Bank of Gainesville, 117 F.3d 1342, 1352 (11th Cir. 1997); Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559, 1566 (11th Cir. 1994).  The Court must first decide whether it has the power to hear Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).  See Baggett, 117 F.3d at

1352; Palmer, 22 F.3d at 1566. Once the Court determines that it has the authority to hear Plaintiff's state law claim, the Court must then examine whether it should, nevertheless, decline to exercise its jurisdiction over these claims pursuant to 28 U.S.C. § 1367(c). See Baggett, 117 F.3d at 1352; Palmer, 22 F.3d at 1566.

Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." See 28 U.S.C. § 1367(a). The "case or controversy" standard is met if Plaintiff's state law claims arise from "a common nucleus of operative fact" with a substantial federal claim. United Mine Workers of America v. Gibbs, 383 U.S. 715, 724-25 (1966); see also Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006); Barcel v. Lele, No. 8:05-CV-1519-T-23, 2005 WL 3468282, at * 1 (M.D. Fla. Dec. 19, 2005). Moreover, the Eleventh Circuit has recognized that, in determining whether a state law claim forms part of the "same case or controversy" as a federal claim, a court should examine "whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996).

The Court finds that Plaintiff's ADA and negligence claims arise from "a common nucleus of operative fact." United Mine Workers of America, 383 U.S. at 724-25. Indeed, Plaintiff alleges the following: (1) a valet attendant crashed his car after Central Parking failed to provide adequate training to its employees regarding how to drive vehicles with hand controls; (2) he suffered emotional and psychological distress and injuries as a result

of the crash; (3) as a further result of the accident, Defendants began to discriminate against him by enacting a policy of refusing to provide valet parking for vehicles with hand controls and by failing to properly train their staff as to how to safely operate vehicles with hand controls.  See generally Second Amended Complaint.  Moreover, the Court notes that it appears that these claims would involve many of the same witnesses, including Plaintiff and Defendants' valet employees, and evidence, such as information relating to Defendants' policies and their provision, or lack of provision, of training to valet employees regarding vehicles with hand controls.  See Hudson, 90 F.3d at 455.  Accordingly, the Court finds that it has the authority to exercise supplemental jurisdiction over Plaintiffs' state law claims.  See 28 U.S.C. § 1367(a).

As noted above, even if the federal and state law claims form part of the "same case and controversy," the Court may, nevertheless, decline to exercise supplemental jurisdiction over Plaintiff's state law claim under certain circumstances.  See 28 U.S.C. § 1367(c); Palmer, 22 F.3d at 1569; Parker, 468 F.3d at 743.  Indeed, §1367(c) provides that a district court has the discretion to decline to exercise supplemental jurisdiction over a state claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

See 28 U.S.C. § 1367(c). Notably, "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." Parker, 468 F.3d at 743. Upon determining that it has the discretion under § 1367(c) to decline jurisdiction, "[a court] should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience, in deciding whether or not to exercise that jurisdiction." Palmer, 22 F.3d at 1559.

Upon consideration of the § 1367 factors, the Court finds that supplemental jurisdiction should be exercised over Plaintiff's negligence claim. The negligence claim is neither novel nor complex and does not substantially predominate over the ADA claim. See 28 U.S.C. § 1367(c)(1), (c)(2). Moreover, the Court has not dismissed Plaintiff's ADA claim and there do not appear to be a compelling reasons for declining supplemental jurisdiction in the instant case. See 28 U.S.C. § 1367(c)(3), (c)(4). Accordingly, the Court finds that Motion to Dismiss 1 is due to be denied to the extent that it seeks the dismissal of Count II of the Second Amended Complaint.

**IV.   Conclusion**

Accordingly, it is **ORDERED**:

1.   Central Parking System of Florida, Inc.'s Motion to Dismiss Second Amended Complaint (Dkt. No. 40) is **DENIED.**

2. Lee Memorial Health System's Amended Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. No. 50) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this 31st day of March, 2008.

*[signature]*
**MARCIA MORALES HOWARD**
United States District Judge

lc3

Copies to:

Counsel of Record